The Town of Solon, Appellant, *v.* The Williamsburgh
Savings Bank, Respondent.

In the petition presented to the county judge in proceedings to bond a town under the town bonding act of 1869 (Chap. 907, Laws of 1869), the petitioners described themselves as "representing a majority of the taxpayers of the town." The affidavit of verification attached to the petition stated that "the persons signing said petition are a majority of the taxpayers." In an action by the town to have bonds of the town, issued by the commissioners appointed in said proceedings, adjudged void, and that they be delivered up and canceled, *held*, that the word "representing" did not necessarily import that the majority did not themselves sign, but did it through agents representing such taxpayers; that it might be treated as having reference to the term "majority," not to the persons

constituting it; and, as it appears that the word was used in various places in the act in that sense, this was a legislative interpretation of it for the purposes of the act; and so, the statement was to be considered as declaring that the subscribers were a majority of the taxpayers.

The attestation clause to each bond stated that the commissioners " have set their hands and seals" thereto.   The commissioners signed as such, and opposite each was the scroll " [L. S.] "   *Held*, that this could not be considered as a seal; but that the omission of a seal did not defeat the enforceable validity of the bonds; at least, that as it appeared that the commissioners intended to properly and effectually execute the bonds, and the omission was by misunderstanding, mistake or inadvertence, a court of equity might afford relief to a person justly entitled to the benefit of the instrument.

Defendant was a *bona fide* purchaser for a' valuable consideration of the bonds in question.   When they came to its hands seals had been affixed, covering the scrolls.   This it appeared had been done after they had been transferred by the railroad company, to whom they were delivered by the commissioners, and before they came to the hands of defendant.   *Held*, that, conceding the presumption was that the seals were affixed by some party interested and that the burden of proof would be upon the one seeking to enforce the bonds to explain the alteration, that rule was not applicable in an equitable action to have the security canceled because of the alteration when it appeared defendant was in no sense chargeable with *mala fides ;* that the bonds were not necessarily invalidated by the addition of the seals, treating it as a material alteration, and it could not be presumed that the alteration was fraudulently made; and that upon the facts appearing it did not entitle plaintiff to the relief sought.

*It seems* that the reference in the attestation clause to the seals, as affixed with the addition of the scroll, does not justify an inference of authority to any holder of the bonds to affix the requisite seals.

After the amount of bonds authorized was issued to the president of the railroad company, he surrendered a portion of them to the commissioners, and they in place thereof delivered to him a like amount of bonds of larger denominations and made payable in a different place, of which those held by defendant are a part.   The returned bonds were destroyed by the commissioners.   *Held*, that, assuming the power of the commissioners to issue bonds was exhausted with the original issue, yet as they represented the town and were in some sense its agents, and as it appeared that the town had for several years paid the interest coupons upon them, there was no equity to support an action for their cancellation against a *bona fide* holder who had purchased in reliance upon the authority with which the commissioners were lawfully clothed.

*Horton* v. *Town of Thompson* (71 N. Y. 513), distinguished.

(Argued March 12, 1889; decided April 16, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 10, 1888, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Esek Cowen* for appellant. The county judge acquired no jurisdiction to render the judgment put in evidence, because the petition did not contain the necessary jurisdictional averments. (Laws 1869, chap. 907; *People* v. *Smith,* 45 N. Y. 783–784; *Merritt* v. *Village of Port Chester,* 71 id. 312; *Shattuck* v. *Bascom,* 76 id. 39; *People ex rel. Rogers* v. *Spencer,* 55 id. 1; *People ex rel. Green* v. *Smith,* id. 135; *Town of Wellsborough* v. *N. Y. C. & H. R. R. R. Co.,* 76 id. 182; *Craig* v. *Town of Andes,* 93 id. 405.) The bonds issued by the commissioners were unsealed, and the addition, without the consent or authority of the town of seals, after they had parted with the bonds, was a material alteration which made them void even in the hands of holders for value. (*Warren* v. *Lynch,* 5 Johns. 239; *Curtis* v. *Leavitt,* 17 N. Y. 545–546; *Andrews* v. *Herriott,* 4 Cowen, 508; *Bank of Rochester* v. *Gray,* 2 Hill, 227; *Olderson* v. *Langdale,* 3 B. & A. 660; *Burchfield* v. *Moore,* 3 E. & B. 688; *Gardner* v. *Walsh,* 32 Eng. L. and Eq. 162; *Chappell* v. *Spencer,* 23 Barb. 584; *Perring* v. *Howe,* 4 Bing. 28; *Abbe* v. *Rude,* 6 McLean, 106; *Jackson* v. *Osborn,* 2 Wend. 556; *Knight* v. *Clemens,* 8 Ad. & Ell. 215; *Tillou* v. *C. & E. M. Ins. Co.,* 7 Barb. 564; *Wild* v. *Armsby,* 6 Cush. 314; *Burdick* v. *Westcott,* 2 Barb. 374; *Waring* v. *Smith,* 2 Barb. Ch. 119; *Simpson* v. *Davis,* 119 Mass. 269, 270; *Willett* v. *Shepard,* 34 Mich. 106; *Herrick* v. *Nolan,* 22 Wend. 388; *Metropolitan Life Insurance Co.* v. *McCoy,* 41 Hun, 144; *Meyer* v. *Hunecke,* 55 N. Y. 417; *Barnet* v. *Abbott,* 53 Vt. 128, 129; *Clute* v. *Small,* 17 Wend. 238.) The new issue of bonds to the amount of $24,000, made for different amounts

than the ones destroyed, and payable at a different place, was beyond the power of the commissioners, was illegal and unauthorized, and the bonds are absolutely void in the hands of any purchaser. (*City of Buffalo* v. *McKay*, 15 Hun, 204; *Hadley* v. *Mayor, etc.*, 33 N. Y. 603; *People* v. *Woodruff*, 32 id. 355.) The taxpayers of the town of Solon were not estopped by the fact that the coupons on these bonds had been paid by taxation for several years before this action was brought. (*People* v. *Batcheller*, 53 N. Y. 128; *Horton* v. *Town of Thompson*, 71 id. 513.) Plaintiff is entitled to equitable relief, as there are a large number of these bonds in the hands of the defendant; they may be sold to different parties and lay the foundation of numerous suits against the town, and their invalidity does not appear, either on the face of the bonds or on the face of any proceedings, which the holders would be obliged to prove in order to recover. (*W. R. R. Co.* v. *Bayne*, 75 N. Y. 1; *Town of Springport* v. *Teutonia Sav. Bank*, id. 397; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 id. 592; *Town of Wellsborough* v. *Teutonia Sav. Bank*, 76 id. 182.)

*Isaac S. Newton* for respondent. There was not an issue of Solon bonds beyond the limit of the statute. (*Westfall* v. *Preston*, 49 N. Y. 249; *Mygatt* v. *Washburn*, 15 id. 316; *Clark* v. *Norton*, 49 id. 243; *People* v. *Hewitt*, 65 id. 275; *People* v. *Suffern*, 68 id. 321.) The provision of the statute for sealing the bonds was merely directory. (Cooley's Const. Lim. 77, 78; *Draper* v. *Town of Springport*, 104 U. S. Rep. 501; Potter's Dwarris on Stat. 224, 226; *People* v. *Cook*, 8 N. Y. 67, 92, 93; *Marchant* v. *Langworthy*, 6 Hill, 646; *Rex* v. *Loxdale*, 1 Burrows, 447; *Wood* v. *Chapin*, 13 N. Y. 509; *Thomson* v. *Sergent*, 15 Abb. 452; *Grandin* v. *Lamore*, 29 Hun, 399; *Ex parte Heath*, 3 Hill, 42–47; *Torrey* v. *Millbury*, 21 Pick. 67; *People* v. *Allen*, 6 Wend. 586; *People* v. *Gardner*, 24 N. Y. 586, 587; *Cunningham* v. *Cassidy*, 17 id. 276; *Supervisors* v. *Galbraith*, 99 U. S. 214; *Indianapolis R. R. Co.* v. *Hurst*, 93 id. 291; *Rock Creek* v. *Strong*,

96 id. 271; *Shaw* v. *Tobias*, 3 N. Y. 188, 193; *Kelly* v. *McCormick*, 28 id. 318; *People* v. *Groat*, 22 Hun, 164; *People ex rel. Atkinson* v. *Tompkins*, 64 N. Y. 53; *L., etc., Co.* v. *Littlewolf*, 38 Wis. 152; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62, 70; *San Antonio* v. *Mehaffy*, 96 U. S. Rep. 315.) A municipal corporation is estopped from availing itself of irregularities by its officers in the exercise of power conferred. (*Moore* v. *City of New York*, 73 N. Y. 238, 244, 246, 247, 250, 251; *Oneida Bank* v. *Ontario Bank*, 21 id. 490.)   The town is liable under the bond, without a seal; and this, independent of the fact that the action of the commissioners is merely directory. (*Springport* v. *Teutonia Savings Bk.*, 75 N. Y. 397; *Draper* v. *Springport*, 104 U. S. 501; *San Antonio* v. *Mehaffy*, 96 id. 315; *United States* v. *Linn*, 15 Peters, 290; *United States* v. *Bradley*, 10 id. 364; *Board, etc.,* v. *Fonda*, 77 N. Y. 350; *People* v. *Lyons*, 7 Daly, 182; *Ring* v. *Gibbs*, 26 Wend. 502; *Whitney* v. *Coleman*, 9 Daly, 238; *People* v. *Mead*, 24 N. Y. 114; 36 id. 224; *Starin* v. *Genoa*, 29 Barb. 442; *McGowen* v. *Deyo*, 8 id. 342; *United States* v. *Stephenson*, 1 McLean, 462; *Bancroft* v. *Stanton*, 7 Ala. 351; *Van Duzen* v. *Hayward*, 17 Wend. 67; *Curtis* v. *Leavitt*, 17 Barb. 318; *Kelley* v. *McCormick*, 28 N. Y. 318; *Lathrop* v. *Bramhall*, 64 id. 365; 26 Wend. 502; 9 Daly, 238; 15 Peters, 290, 307; 10 Wall, 365; 5 Mass. 318; 12 id. 369; 5 Allen, 415; 77 N. Y. 350; 10 Peters, 364; *Bernard's Township* v. *Stebbins*, 109 U. S. 341; 8 Barb. 342; 5 Wend. 191; 9 id. 223; 28 N. Y. 318, 321; 3 Comstock, 188; 18 Wend. 521; 20 id. 673; 7 Ala. 351; 17 Barb. 318; *Bullock* v. *Whipp*, 1 New Eng. Rep. 809; *Lebanon Savings Bk.* v. *Hollenbeck*, 29 Minn. 322.)   The bonds were properly sealed by the commissioners. (*Curtis* v. *Leavitt*, 17 Barb. 309; 15 N. Y. 9; *Ross* v. *Beddell*, 5 Duer, 462; *Gillespie* v. *Brooks*, 2 Redf. 349; *Queen* v. *St. Paul*, 9 Jurist, 442; 7 Q. B. 232; *Underwood* v. *Dollins*, 47 Mo. 259; *N. O. R. R. Co.* v. *Burke*, 53 Miss. 200; 1 Dillon on Mun. Corp. § 190; *Meredith* v. *Hinsdale*, 2 Caines, 362; *Warner* v. *Lynch*, 5 Johns. 239; 2 Hill, 227; 4 Cow. 508; 3 Hill, 493; 1 Denio, 376; *Pierce* v. *Indseth*,

106 U. S. 546.)   It is sufficient that the seal, whatever it is, be impressed directly on the paper.   (2 R. S. 404, § 61; Code, § 960; *Pillow* v. *Roberts*, 13 How. [U. S.] 474.)   If a seal is necessary, and this is not a perfect seal, the declaration that it is sealed, and the sale for value with a place for a seal left open, and pointed out, is an authority to any person holding to place a seal in the blanks.   (*Fullerton* v. *Sturges*, 4 Ohio St. 530; *Angel* v. *Ins. Co.*, 95 U. S. 339; *Montague* v. *Perkins*, 22 Eng. L. and Eq. 516; *Boyd* v. *Brotherson*, 10 Weld. 93; *Mitchell* v. *Culver*, 7 Cow. 337; *Ledwich* v. *McKim*, 53 N. Y. 307; *Hardy* v. *Norton*, 66 Barb. 534; *Michigan Bk.* v. *Eldred*, 9 Wall. 544; *Redlich* v. *Doll*, 54 N. Y. 234; *C. C. Banks* v. *Bradner*, 44 id. 680; *Paige* v. *Morrell*, 3 Keyes, 117; *Van Deusen* v. *Howe*, 21 N. Y. 531; *Day* v. *Saunders*, 3 Keyes, 347; *Clute* v. *Small*, 17 Wend. 238; *Garrard* v. *Hadden*, 67 Penn. 82.)   The burden of proof rests with the plaintiff, when it asks the court to destroy this paper, to prove, first, that the act was done by a party in interest; and next that it was done with an evil intent. (*Trow* v. *G. C. S. Co.*, 1 Daly, 280; *Rees* v. *Overbough*, 6 Cow. 746; *Warrall* v. *Green*, 3 Wright, 388; *Van Brunt* v. *Eoff*, 35 Barb. 501; *Casoni* v. *Jerome*, 58 N. Y. 221; *Booth* v. *Powers*, 56 id. 31; *Merrick* v. *Bowery*, 4 Ohio St. 71; *Meyer* v. *Huneke*, 55 N. Y. 412; *Kennedy* v. *Kountz*, 63 Penn. 387; *Clute* v. *Small*, 17 Wend. 238; *Flint* v. *Craig*, 59 Barb. 319; *Truett* v. *Wainwright*, 9 Ill. 411; *United States* v. *Linn*, 1 How. 104; *Nevens* v. *Legrand*, 15 Mass. 436; *Horst* v. *Wagner*, 43 Iowa, 373.)   The plaintiff is estopped by the recitals in the bonds from alleging (1) that the bonds were not delivered on the day they bear date, and (2) that they were not, when issued, sealed as they came to the hands of the purchaser.   (*Moore* v. *City of New York*, 73 N. Y. 238; *Sheboygan* v. *Parker*, 3 Wall. 96; *Gould* v. *Town of Oneonta*, 71 N. Y. 304, 308; *Horn* v. *Town of New Lots*, 83 id. 106; *Cagwin* v. *Town of Hancock*, 84 id. 540; *Lyons* v. *Chamberlain*, 89 id. 578; *McNeil* v. *Tenth Nat., Bk.*, 46 id. 325; *Bk. of Batavia* v. *New York, etc., Co.*,

106 id, 195; *Curnen* v. *Mayor, etc.,* 79 id. 511; *R. R. Co.* v. *Schulte,* 103 U. S. 118; *Dair* v. *U. S.,* 16 Wall. 4; *Butler* v. *U. S.,* 21 id. 272; *Avery* v. *Town of Springport,* 14 Blatchf. 272.) The change of the denomination and place of payment of the Solon bonds by the commissioners was proper. (*Fleming* v. *Village,* 92 N. Y. 368; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 id. 68; *F. & M. Bk.* v. *Butcher, etc.,* 16 id. 142; *President* v. *Corwin,* 37 id. 330; *Lee* v. *Village of Sandy Hill,* 40 id. 442.) The town cannot repudiate the bonds because of its full and abundant recognition of their validity, and unreasonable delay in denying them. (*Zabriskie* v. *C., etc., R. R. Co.,* 23 How. 401; *Alvord* v. *S. Sav. Bk.,* 98 N. Y. 609; *Town of Mentz* v. *Cook,* 108 id. 510; *Hill* v. *P. Sav. Bk.,* 101 id. 490; *People* v. *Smith,* 55 id. 135; *In re B. W. & N. R. R. Co.,* 72 id. 245; 75 id. 335; *Farnham* v. *Benedict,* 107 id. 159; *Town of Lyons* v. *Chamberlain,* 89 id. 578; *Hoyt* v. *Thompson,* 19 id. 207; *Sheldon* v. *Eickzmeyer, etc., Co.,* 90 id. 616; *F. L. & T. Co.* v. *Walworth,* 1 id. 433.) The fact that some of the Taylor consents bore evidence of erasure, so as to request the town to be bonded for $20,000 rather than $25,000, does not invalidate the bonds. (*Little* v. *Herndon,* 10 N. Y. 31; *Crossman* v. *Crossman,* 95 id. 145; *Syracuse Sav. Bk.* v. *Seneca Falls,* 86 id. 321; *People* v. *Allen,* 52 id. 541, 542; *Macon* v. *Shores,* 97 U. S. 277; *County of Jo Daviess* v. *Haydekoper,* 98 id. 98; *People* v. *Smith,* 49 N. Y. 777; *Orleans* v. *Platt,* 99 U. S. 676; *Lyons* v. *Munson,* 96 id. 684; *Cagwin* v. *Town of Hancock,* 84 N. Y. 582.) A certificate of stock is simply the evidence of the shareholder's title. (*Onondaga Trust Co.* v. *Price,* 87 N. Y. 549; Pierce on Railroads, 118, 119; Potter on Corp.§§ 257, 334, 335.) A court of equity will not entertain an action to set aside a bond for a defect which either appears upon the face of it, or must be proved, to recover at law. (*Town of Venice* v. *Woodruff,* 62 N. Y. 462, 464; *Fowler* v. *Palmer,* Id. 533; *Town of Springport* v. *Teutonia Sav. Bk.,* 75 id. 397; *Remington Paper Co.* v. *O'Dougherty,* 81 id. 482; *Globe Mut. Ins. Co.* v. *Reals,* 79 id. 202; *Thompson* v.

*Hodskin*, 13 Week. Dig. 367; *T. & B. R. R. Co.* v. *B., H. T. & W. R. R. Co.*, 86 N. Y. 107, 127; *Brenner* v. *Meigs*, 64 id. 515; *White* v. *Hulbert*, 46 id. 115; *People* v. *Hutton*, 18 Hun, 122; *People* v. *Spencer*, 55 N. Y. 6.)

BRADLEY, J. The relief sought in bringing this action was that certain bonds of the plaintiff, purporting to have been issued pursuant to statute, and held by the defendant, be adjudged void, and that they be surrendered up and canceled.

They, with other bonds amounting in the aggregate to $44,800, were, by commissioners appointed for that purpose, in a proceeding had before the county judge of Cortland county, issued in aid of the Utica, Chenango and Cortland Railroad Company. The proceeding, which resulted in an adjudication and appointment of the commissioners, was had and completed in July, 1870. It was founded upon the statute, which provided that "whenever a majority of the taxpayers of any municipal corporation in this state, whose names appear upon the last preceding tax-list or assessment-roll of said corporation, as owning or representing a majority of the taxable property in the corporate limits of such corporation, shall make application to the county judge of the county in which such corporation is situated, by petition verified by one of the petitioners, setting forth that they are such a majority of taxpayers and represent such a majority of taxable property," etc., the further proceedings may be taken as therein provided, for the requisite adjudication and the appointment of commissioners to issue the bonds of the corporation and invest them in the stock or bonds of the railroad company, in view of which the proceeding was taken. (Laws of 1869, chap. 907.) The adjudication was in due form made, and the commissioners appointed were vested with power to issue the bonds of the plaintiff and invest them in the stock or bonds of the railroad company, if the proceeding was so taken and conducted as to confer jurisdiction on the county judge to entertain and consummate it.

The first inquiry which is the subject of controversy arises upon the petition presented to the county judge, and by which the proceedings before him were initiated. It was essential to his jurisdiction and to the validity of the adjudication and its result, that the petition contain a statement of all the facts which the statute provided should be set forth in the application. And, as the proceeding rests wholly upon the statute, and is in derogation of the common law, and affects the rights of property of individuals, the statute must be strictly pursued in all respects pertaining to the question of jurisdiction, to render the proceeding effectual. (*People ex rel. Rogers* v. *Spencer*, 55 N. Y. 1; *People ex rel. Green* v. *Smith*, Id. 135; *Town of Wellsborough* v. *N. Y. & C. R. R. Co.*, 76 id. 182; *Craig* v. *Town of Andes*, 93 id. 405.)

The petition was addressed to the county judge and proceeded to state that "The undersigned, representing a majority of the taxpayers of the town of Solon, in said county of Cortland, whose names appear upon the last preceding tax-list or assessment-roll of said town," etc. Nothing in the further provisions of the petition is criticised. It was signed by persons purporting then to be citizens of that town, and upon it was the verification by the affidavit of one of the petitioners, which, among other things, stated that "the persons signing said petition are a majority of the taxpayers whose names appear upon the last preceding tax-list and assessment-roll in said town."

The contention on the part of the plaintiff is, that the petition failed to set forth that the petitioners were such a majority of the taxpayers by reason of the insertion of the word "representing," which, it is claimed, so qualified the phrase "a majority of the taxpayers" following it, as to import that such majority did not themselves subscribe the petition, but did it only through the instrumentality of others who were such subscribers, and, in the relation of agency, represented such taxpayers in thus making the application. If the petition in that respect requires such construction, it was defective and could not support the proceedings founded upon it. (*People ex rel. Haines* v. *Smith*, 45 N. Y. 772.) The inser-

tion of the word " representing " was clearly of no advantage to the petition, and if it had been omitted, there would have been no opportunity for criticism.   But the word in its connection and apparent purpose, we think, is not entitled to the interpretation and effect contended for by the plaintiff's counsel, in giving construction to the instrument.   It may be treated as having reference and relation to the term "majority" rather than to the persons constituting it.   The inquiries, What represents a majority ?   How is a majority represented? in their application to it as a term, might produce as the answer : More than one-half of the whole of any number of persons or things. In that sense it would be within common parlance to say that a majority is represented by a particular body of people, although they are the persons who constitute the majority. That this was the meaning applicable and intended by the statute to be applied in the use there made of it, appears by the provision in the second section of the same act, that "if it shall appear satisfactorily to him (the county judge) that the said petitioners, or the said petitioners and such other taxpayers as may then and there appear before him and express a desire to join as petitioners in said petition, do *represent* a majority of the taxpayers," etc., and in the third section, that "if the said judge shall adjudge and determine that such petitioners do *represent* a majority of such taxpayers" etc.   The same expression is carried into and repeated in the amendatory act. (Laws 1871, chap. 925, § 2.)   The use made of the word in that connection by the statute would seem to be a legislative interpretation of it for the purposes of the act, and thus give to the phrase in question, of the petition, the requisite import, and make it correspond, in that respect, with the affidavit of verification and the adjudication as made by the county judge.   The portion of the petition which embraced the names of the subscribers is not in the record, and, in view of the finding of the trial court, it must be assumed that no appearance of agency was there indicated.   Apparently, as principals, and in the manner required by the statute, the petitioners, appear in the petition, as owning or representing a majority of the tax-

able property in the town, and represent that they desire the creation and issue of its bonds, etc. It is very likely that the exercise of more care in preparing the petition would have been manifested if the criticised word had been omitted; and the same may perhaps be said in respect to the like phrase in the statute. But when it can be ascertained, such meaning must be given to words as is apparently designed for them in their connection and use in statutes or other instruments, although it may not strictly conform to their lexical meaning. We think the construction was warranted that the petition set forth that its subscribers then were a majority of the tax-payers of the town, etc., as required by the statute. It follows that the county judge had jurisdiction to entertain the proceeding; and it sufficiently appears by his statement in the notice for publication, signed by the county judge, to warrant the conclusion that the requisite order was made by him for that purpose. There is no remaining question going to the jurisdiction of that officer to make the adjudication and appoint the commissioners, which was duly accomplished by him.

In respect to their duties, the statute provided that it should be the duty of the commissioners to cause to be made and executed the bonds of the municipal corporation, attested by the seal of such corporation affixed, if it have a common seal, and if not, then by their individual seals and signed and certified by them. The commissioners made and issued the bonds of the town to the amount before mentioned, and invested them in the stock of the railroad company for a like amount. The town had no common seal. The attestation clause of each bond was: " In witness whereof the within named commissioners * * * have caused this bond to be made and executed, and have set their hands and seals hereto the first day of September, in the year one thousand eight hundred and seventy;" and they subscribed their names as commissioners, and opposite each was the scroll "[L. S.]." The requisite of a seal at common law was that it be impressed upon wax, wafer or other tenacious substance. It is contended by the defendant's counsel that

this doctrine has been relaxed, and that the scroll upon these bonds may be treated as adopted by the commissioners as their seal, and, therefore, rendered effectual as such. Whatever may have been the practice in other states, the rule of the common law in that respect has been substantially adhered to in this state, except so far as modified by statute. (*Warren* v. *Lynch*, 5 Johns. 239; *Bank of Rochester* v. *Gray*, 2 Hill, 227; *Farmers and Manufacturers' Bank* v. *Haight*, 3 Hill, 493; *Coit* v. *Milliken*, 1 Denio, 376.) The statute on the subject has relation only to corporate and official seals. In the cited case of *Curtis* v. *Leavitt* (15 N. Y. 9), the question of the sufficiency of the seal to the bonds in question, which were made prior to such statute, was considered in some of the several opinions delivered. They were the bonds of a corporation, and the corporate seal was merely impressed upon the paper on which each bond was written or printed. The view of Judge Comstock was that the rule in England on that subject was applicable as the contract was made there, and cited *Queen* v. *Inhabitants of St. Paul, etc.* (7 Adol. & Ellis [N. S.] 232), in support of the proposition that an impression on wax or wafer was unnecessary, but that it was sufficient that the seal be impressed upon the paper with intent to seal. It is unnecessary to refer to the view of other members of the court, as no question as to the seal was determined by the court in that case, other than that no seal was necessary to the validity of the bonds. In *Ross* v. *Bedell* (5 Duer, 462), the question arose upon a notarial seal, and it was held that a seal stamped upon paper of sufficient tenacity to retain the impression is a seal within the rule of the common law. (*Van Bokkelen* v. *Taylor*, 62 N. Y. 105.) The doctrine established in this state upon the subject, does not permit the conclusion that the scroll upon the bonds in question was the seal of the commissioners.

But it does not follow that the bonds are for that reason invalid. There are no negative words in the statute declaring or necessarily implying such effect of the omission of the seal, and whether or not this requirement was merely directory, as

held in *Draper* v. *Springport* (104 U. S. 501), inasmuch as they were issued and delivered by the commissioners in the performance of their duty and upon a consideration, the mistake or failure to affix their seals does not defeat the enforceable validity of the bonds. (*People ex rel. Fiedler* v. *Mead*, 24 N. Y. 114; *Kelly* v. *McCormick*, 28 id. 318; *Board of Education* v. *Fonda*, 77 id. 350; *San Antonio* v. *Mehaffy*, 96 U. S. 312; *United States* v. *Linn*, 15 Peters, 290.)

At all events, as the commissioners intended to properly and effectually execute the bonds, and the omission of the seals was caused by their misunderstanding, mistake or inadvertence, the court of equity may afford the relief requisite to the party justly entitled to the benefit of the instruments, and to render them enforceable. (*Wiser* v. *Blachly*, 1 Johns. Ch. 607; *Bernards Township* v. *Stebbins*, 109 U. S. 341; *Cockerell* v. *Cholmeley*, 1 Russ. & Myl. 418.)

In September, 1875, the defendant, by purchase, for a valuable consideration, became the owner and holder of thirty-two of the bonds of five hundred dollars each. At that time seals had been affixed and were upon them over the places where the scroll before mentioned was placed, so that the bonds then appeared to have been properly sealed. The defendant purchased them in good faith, and then supposed that the seals were those of the commissioners. The evidence tends to prove that the seals were not affixed by any officer of the railroad company who received them from the commissioners, and that they were not upon them when transferred by the company. Who were all the intermediate holders, between the transfer by the railroad company and the purchase of them by the defendant, does not appear. The trial court found that those seals were affixed by a stranger. If placed there by some one having no interest in the bonds, and without any authority, consent or complicity of any person having any interest, the seals would not be treated as affecting any alteration of the bonds. (*United States* v. *Linn*, 1 How. [U. S.] 104; *Rees* v. *Overbaugh*, 6 Cow. 746; *Casoni* v. *Jerome*, 58 N. Y. 315; *Fullerton* v. *Sturges*, 4 Ohio St. 530.)

If, therefore, this was done by a stranger in the sense of the term applicable in such case, the alteration produced by it would not be effectual to impair the right before existing to enforce the bonds. But, inasmuch as they passed through the hands of other owners before they reached the defendant, it is contended that the finding that it was done by a stranger is not supported, and that the presumption arises that the seals were affixed by some party having an interest in having them put on, and, therefore, explanation is necessary to relieve them from the legal effect of the alteration. As a general rule, when a material alteration appears to have been made in a written instrument after its execution, evidence is necessary to explain it, and the burden of proof rests upon the party seeking to enforce it to do so to support a recovery upon it. (*Herrick* v. *Malin*, 22 Wend. 388; *Smith* v. *McGowan*, 3 Barb. 404; *Simpson* v. *Davis*, 119 Mass. 269; *Willett* v. *Shepard*, 31 Mich. 106; *Waring* v. *Smyth*, 2 Barb. Ch. 119.)

The plaintiff's counsel seeks to apply that rule in respect to the burden of proof to this case, and insists that the defendant must bear it. While the burden is with a party seeking to enforce a contract, to relieve it from the effect of any material alteration made in it after its inception, that rule is not necessarily applicable to a defendant in an action brought to have a security held by him canceled upon that ground, when it appears that such defendant is in no sense chargeable with *mala fides* in that respect. Our attention is called to no authority going to that extent. And the proposition does not seem to commend itself to a court of equity, which is supposed, within recognized bounds, to exercise discretionary powers in such cases. (*McHenry* v. *Hazard*, 45 N. Y. 580; *Town of Springport* v. *Teutonia Sav. Bk.*, 75 id. 397–408.) It does not appear that the bonds were necessarily invalidated by the addition of the seals, treating it as a material alteration. And as against the defendant, who is a holder in good faith and free from imputation in the matter, the presumption which might arise in an action where the securities were asserted for the purpose of a recovery founded upon them, is not properly

available in this action, brought for the purpose of their cancellation. Equity will not grant such relief upon a doubtful case. For the purpose of the relief in view in the action, it cannot be assumed upon the case, as presented, that the alteration was fraudulently made. And if the defendant eventually fail to recover upon the bonds, it may be that a recovery can be supported upon the original consideration. (*Clute* v. *Small*, 17 Wend. 238; *Meyer* v. *Huneke*, 55 N. Y. 412–417.) It is not now necessary to inquire into the extent or value of such a remedy.

The alleged alteration upon the facts appearing in the record does not, in this action, entitle the plaintiff to the relief in view against the defendant.

It is urged on the part of the defendant that, in view of the reference in the attestation clause to seals as affixed, with the fact that the scroll before mentioned was added, afforded an invitation or implied authority to any holder to affix the requisite seals. And cases are cited bearing upon that subject in relation to uncompleted instruments. But the cases generally, in which that has been recognized and supported, have been those where the possession of the uncompleted paper has been intrusted to persons under circumstances which permitted the inference of authority to do it, and when, in view of such apparent authority it would be a fraud upon innocent parties taking in good faith to permit the assertion to the contrary. (*Ledwich* v. *McKim*, 53 N. Y. 307; *Chemung Canal Bk.* v. *Bradner*, 44 id. 680; *Redlich* v. *Doll*, 54 id. 234; *Van Duzer* v. *Howe*, 21 id. 531; *Day* v. *Saunders*, 3 Keyes, 347; *Mitchell* v. *Culver*, 7 Cow. 336; *Boyd* v. *Brotherson*, 10 Wend. 93; *Michigan Bk.* v. *Eldred*, 9 Wall. 544; *Angle* v. *N. W. Mut. Life Ins. Co.*, 92 U. S. 330.) The bonds in question were not treated by the parties to them as incomplete, but when issued by the commissioners were supposed by them to be completely executed and were delivered and accepted as such. Nothing, therefore, appears to have then occurred between the parties to imply authority to add anything to the instruments to give them a different import in any respect

than that which they then had.    While we do not hold that there was any implied authority of any holder to affix the seals, the views already given render it unnecessary to express any opinion upon the question.    The fact that the commissioners, in the attestation clause, declared that they had affixed their seals to the bonds was well calculated to deceive the defendant when it purchased them and to enable its officer to understand that they had been properly placed there, but we are not, for the purposes of this action, called upon to determine whether, as against the plaintiff, any advantage can on that account legally result to the defendant.

It is contended that the bonds held by the defendant were issued without authority and were, for that reason, void.    This contention is founded upon the fact that about three months after the last of the bonds were delivered by the commissioners to the president of the railroad company, he surrendered up to them a number of those bonds, amounting to $24,000, and they issued and delivered to him, in their place, a like amount, of which those held by the defendant are a part.    The substituted bonds were of larger denomination than those so surrendered, and were made payable at a different place.    And this change was made with a view to their availability for sale and transfer in the city of New York.    It may be assumed that the power of the commissioners to issue bonds of the town ceased when they had issued the amount mentioned in the petition of the taxpayers.    The returned bonds had not been used by the railroad company.    They were destroyed by the commissioners, so the substituted bonds did not increase the entire amount outstanding beyond the authorized limit. The bonds issued pursuant to the statute were the obligations of the town, and, in the performance of their defined duty in that respect, the commissioners represented the plaintiff, and, in some sense, their relation was that of agency.    When the proceeding for the purpose has been (as is treated to have been in this case), legally conducted to the appointment of such officers, irregularities in the manner in which they perform

their duties do not affect the validity of the bonds issued in the hands of an innocent holder for value. (*Town of Lyons* v. *Chamberlain*, 89 N. Y. 586.) The bonds are in form negotiable, and while they cannot be treated as commercial paper, to the extent of the rule applicable to it in that respect, they have the character of negotiability sufficiently to furnish, under some circumstances, protection to a *bona fide* holder, which he otherwise would not have for the support of his claim upon them. (*Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *Brainard* v. *N. Y. C. R. R. Co.*, 25 id. 499.)

The liability of the municipal corporation is dependent upon the statute, and its observance in the proceedings had with a view to the creation of such obligations. And when there is a failure to comply with the statute in the steps taken to vest the power in those officers to create the bonds, there can in this state be taken no rights by a person as a *bona fide* holder. (*Cagwin* v. *Town of Hancock*, 84 N. Y. 532; *Craig* v. *Town of Andes*, 93 id. 405.)

So far as we have observed, the doctrine of the cases does not necessarily go any further in that respect. The examination of the proceedings before the county judge disclosed their regularity and showed that the persons whose names were subscribed to the bonds, were duly appointed, and by the statute vested with the power to issue bonds like those in question. While the commissioners were not appointed by the town or clothed with power by it, the power to exercise their statutory defined duties was given pursuant to the requisite consent of the taxpayers. The question, therefore, arises whether, by this issue of the substituted bonds, the plaintiff was charged with liability. The issue of bonds outstanding in excess of the amount authorized would have been void. That was not the case here, and the plaintiff was practically unaffected by those put in place of the ones surrendered. The plaintiff, through the commissioners, paid the interest coupons upon them for several years, and the defendant was the holder of them for six years before this action was commenced. These facts might be entitled to some con-

sideration upon the question of laches. (*Alvord* v. *Syracuse
Sav. Bk.*, 98 N. Y. 599, 610.) But we do not place our con-
clusion upon that ground. The defendant was a *bona fide*
holder of these bonds, and as such relied upon the authority
with which the commissioners were lawfully clothed. To
charge the plaintiff upon them would not increase its apparent
liability beyond that which it undertook by the proceeding had
pursuant to the statute to assume. So there is no equity
in its behalf as against the defendant, to support this action
for their cancellation arising out of the substitution. The
defendant was, not only by the apparent situation at the time
of the purchase, but by the continued recognition of the obli-
gation of the bonds for several years thereafter, induced to
understand that they were in all respects lawfully created.
And they were, in fact, issued and delivered by the persons
clothed with power to issue the bonds of the town. The
extrinsic fact now relied upon to deny to them the power to
issue these particular bonds at the time and in the manner it
was done, was peculiarly within the knowledge of those
persons so selected to represent the town in that respect.
This, as between principal and agent, is sufficient to charge
the former with the consequences of the act of the lat-
ter in the scope of his apparent authority, as against an
innocent party acting in reliance upon such situation,
although authority to do the particular act does not, in fact,
exist. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30;
*Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 id.
195.) This proposition may not, to the full extent to which
it is applied to the relation of an agent clothed by his princi-
pal with authority, be applicable to the commissioners in
their relation to the town for which they are appointed to
perform the duties devolved upon them, but in the reason
of it is illustrated a principle which may be applied to the
circumstances of the present case in reference to the execu-
tion of the bonds in question.

In the cited case of *Horton* v. *Town of Thompson* (71
N. Y. 513), the bonds appeared to have been, in terms, issued

in violation of the statute pursuant to which the consent. of the taxpayers was given, upon which the proceeding taken was had. And the remarks of the learned judge who delivered the opinion may be treated as applicable only to the case as there presented. They represent the town in the exercise of the powers with which they are vested. (*Cagwin* v. *Town of Hancock*, 84 N. Y. 542; *Alvord* v. *Syracuse Savings Bank*, 98 id. 599.)

The practical effect of this substitution of the bonds was not an excessive issue, but the continuance of those issued, modified in form, not in substance, and these were the only ones, with others outstanding, which covered the amount of the stock of the railroad company, to which the commissioners had subscribed for the town, and for which they had undertaken to issue its bonds for a like amount. "He that seeks equity must do equity," is a fundamental maxim of equity jurisprudence.

The conclusion is that the plaintiff was not entitled to the relief sought in this action upon the facts as proved and found in the court below.

The judgment should be affirmed.

All concur, except Follett, Ch. J., not sitting.

Judgment affirmed.