ALPHIN *v.* TATUM.

4-3701

Opinion delivered October 29, 1934.

*McKay & McKay,* for appellant.

*Alvin Stevens, Mahony & Yocum, C. B. Crumpler* and *Compere & Compere,* for appellees.

MEHAFFY, J.  In May, 1927, William Peterson entered into a written contract with the county judge of Union County and the commissioners of public buildings of said county to erect a courthouse according to certain plans and specifications.  Peterson was to receive as compensation, the sum of $692,500, which was paid by warrants drawn on the county treasury and payable out of the county general revenue fund.  $95,000 was payable on demand, $45,000 payable August 1st each year from 1928 to 1940, inclusive, and the remaining warrant of $12,500 payable on August 1, 1941.

A suit was filed by taxpayers of Union County to restrain the county judge and commissioners of public buildings and the contractor from proceeding further in the erection of the court house.  This suit was decided October 24, 1927, and this court held that the contracts and warrants were valid.

There is still due, according to the complaint in this case, $327,500, maturing at the rate of $45,000 on August first of each year for the years 1934-1940, inclusive, and $12,500 maturing August 1, 1941.

On July 24, 1934, a contract was made and entered into by and between Union County, acting through the county judge, who was authorized by resolution of the levying board of said county, and Roy E. Smith as trustee for R. N. Garrett and others, being the owners and holders of all the outstanding court house warrants.

The contract recites, among other things, that all of the courthouse warrants mentioned above have been paid and canceled except the warrants maturing in the years 1934-1941, inclusive, in the sum of $327,500; that these warrants are now owned by persons on whose behalf Roy E. Smith is acting.  The contract also recites that the revenues of the county have, since the date of the first contract, decreased to such an extent that they are insufficient to pay the maturities of said court house warrants, and to pay the necessary operating expenses of the county government.

It is proposed to refund the warrants so as to make them payable as follows: the warrants due August 1, 1934, to August 1, 1938, inclusive, $20,000.25; the war-

rants due August 1, 1939, to August 1, 1946, $25,249.59; and the warrant due August 1, 1947, $25,502.03. That is, one warrant is payable annually as above stated until the entire debt is paid. The outstanding warrants now are as follows: August 1, 1934, to August 1, 1940, $45,000. That is, $45,000 is due annually until 1940, and on August 1, 1941, there will be due $12,500. It is proposed to exchange these warrants for the above warrants of smaller amounts.

When the case involving the validity of the contract to build the courthouse, and the validity of the warrants issued in payment of same was decided by this court, the court held that the contract and warrants were valid. *Lake* v. *Tatum*, 175 Ark. 90, 1 S. W. (2d) 554.

The appellant contends that Amendment No. 10 to the Constitution of the State of Arkansas impliedly repeals §§ 1994, 1996, 1997 and 1998 of Crawford & Moses' Digest. These sections provide for the calling in of outstanding warrants, and the first part of Amendment No. 10 provides for conducting the counties on a sound financial basis, and prohibits the making of certain allowances and certain contracts. It is unnecessary to discuss this first part of the amendment because the warrants issued in payment of the courthouse have already been held valid by this court. The amendment, however, contains the following section:

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid."

It is contended by the appellant that the sections of Crawford & Moses' Digest above referred to are repealed by Amendments Nos. 10 and 17 to the Constitution. These amendments to the Constitution do not repeal the sections of the digest mentioned. While Amendment No. 10 requires the affairs of counties and municipalities to be conducted on a sound basis, and prohibits making

debts beyond the revenue of the county, it also provides that, to secure funds to pay the indebtedness outstanding at the time of the adoption of the amendment, counties and municipalities may issue interest-bearing certificates of indebtedness for the payment of which they may levy a tax, not to exceed three mills, in addition to the tax now authorized by law.

Union County is not proposing to issue interest-bearing evidences of indebtedness or to levy a tax in addition to that now provided by law, but the only thing it is undertaking to do is to make the annual payments smaller so that they may be met and paid from the revenue of the county. There is no constitutional provision prohibiting a contract of this kind.

If it were sought or intended to levy an additional tax this could only be done by complying with the provisions of Amendment No. 10. Union County is not undertaking to construct, reconstruct or extend any county courthouse or county jail, and not undertaking to levy a tax as provided in Amendment No. 17. In order to issue interest-bearing evidences of indebtedness or levy a tax, these amendments to the Constitution must be complied with, but, as the county is not undertaking to do any of the things mentioned in these amendments, they have no application. These amendments were discussed at length in the case of Carter v. Cain, 179 Ark. 79, 14 S. W. (2d) 250, and it would serve no useful purpose to discuss them further here.

The decree of the chancery court is correct, and therefore affirmed.